Next case, Adler v. Energy Debt Holdings, Mr. Taylor. Good morning, Your Honors, and may it please the Court. This is an appeal from a Rule 12b-6 dismissal of an adversary complaint that was related to a bankruptcy case in Houston. Of course, as an appeal of an order granting a motion to dismiss, it's reviewed de novo. It really presents two primary issues today. The first is whether or not the statements of counsel for the Small Business Administration at the confirmation hearing create judicial estoppel to prevent my client from making an argument that the debt he acquired from the Small Business Administration was senior payment priority to the debt owed by the debtor to the APLEEDH. The second is, even apart from that, whether or not certain orders in the case, and in particular, the cash collateral order and the confirmation order, the order confirming the plan, prevent those arguments from being made. And I'll start with the second argument because I think it gives context to the issue of judicial estoppel. We had three levels of debt in this case on a pre-petition basis. We had Mr. Adler's debt that was owed by the debtor to Mr. Adler. He had debt owed by the debtor to EDH, and he had debt owed by the debtor to the Small Business Administration pursuant to an economic injury disaster loan, it was a COVID loan. The documents provided that Mr. Adler agreed that his debt would be subordinate to EDH. EDH agreed in connection with its debt that it would be senior to all other indebtedness saving except for the debt that was owed to the SBA under the EIDL loan. During the course of the case, there was a cash collateral order that was issued, and it contained what you often see in cash collateral orders in bankruptcy case, and that's a challenge provision. And that's a provision that says, oftentimes, that if there is no challenge made within a certain specified time period, that the debt that is not challenged is given not only validity but a certain level of priority. That was in May of 2023. What the challenge clause in this case says, that if no one makes a challenge, that EDH would have an allowed claim, and it would be, its indebtedness would be secured by valid, binding, perfected, enforceable liens, and security interests. What it doesn't say is what the priority would be. The cash collateral order does not set the priority of the debt for EDH or any other party. That was set contractually, and the argument is it should have been raised, the argument was made by the appellee, and the argument that was addressed by the court below is that that should have been raised as a challenge. In fact, two reasons that it shouldn't be. One is there was no dispute as to priority at that time. The issue of lien priority was not raised until November of 2023, six months later, and we'll talk about that in a moment. And that was because the SBA filed its UCC1, its financing statement, in the wrong jurisdiction. Secondly, the cash collateral order did not set priority, and did not purport to set priority in any way, shape, or form. Validity and priority are separate concepts, and that case law is discussed in our briefing. Validity does not mean priority. Priority is a separate concept. Is validity at issue in this case at all? It's not. It's priority. So the priority was set as of May 2023, when the assertion is a challenge should have been brought. The priority was set by agreement. It was set by the agreement of Mr. Adler to be subordinate to EDH, and it was set by the agreement of EDH to be subordinate to the SBA loan. So there's no reason for anyone to raise any challenge in May of 2023. And again, that did not occur until November of 2023. Don't know why that's not on the record. My suspicious mind leads me to believe that it could have been that somebody knew about it and decided not to raise it because it was clear from the documents, but then tried to take advantage of that later. The second order that was entered in this case that was discussed below, and was discussed by the appellees, the confirmation order. The confirmation order set a payment priority. What happened is at the confirmation hearing, the counsel for the SBA came in and made an argument that, you know, the argument was who's first in priority? The counsel for the SBA admitted that its lien was filed in the incorrect jurisdiction. This was a Delaware corporation, and they filed their UCC1 in Texas. Should have been filed in Delaware, to be exact. Didn't do it. Got it, just got it wrong. And Judge Norman, the bankruptcy judge, asked the question, does that mean that you're second? And the counsel for the SBA said yes. I think you're right, effectively is what she said. Now, what does that mean? In the context of judicial estoppel, we'll talk about that. But what the court took that to mean is that the SBA was not entitled to any payment priority, and that it was subordinate in payment priority to EDH. That was implemented pursuant to the plan. However, in the plan of reorganization, the parties expressly reserved all of their rights with respect to these priority issues, so long as they've been preserved in the cash collateral order. And remember, again, the cash collateral order did not determine priority, so our argument is that priority determination was saved for a later date. Ultimately, what happened in this case is Mr. Adler bought the SBA note. He had a guarantee of the note anyway. He reached a settlement with the SBA, bought the note, and is now asserted in a complaint that he is entitled to recover under the SBA note as the assignee of that note, because it is senior in payment priority to the EDH note. EDH obviously contested that and moved to dismiss. So, Your Honors, the reason that we don't think that there is any order in the bankruptcy court that prevented the argument, again, is twofold. One, payment priority was not decided under the cash collateral order, and two, that argument was specifically reserved under the plant and confirm plan of reorganization, which is what we did. The second argument that was addressed below is that that statement by the SBA's counsel is binding upon Mr. Adler. And we don't take the position that as assignee, we're not bound by what the arsenal did. That's pretty black-lettered case law, and we acknowledge that. Question is, what does it mean? What does an offhand comment mean to a judge that if you look at the context of the discussion, it's a discussion about whether or not, and this is, again, November of 2023, whether or not the UCC-1 was filed in the wrong jurisdiction, and what that means with respect to the lien. Can we go back to your prior point about the cash collateral order not addressing or setting priority? I'm looking at the language, and it's talking about challenges to the validity, perfection, enforceability, allowability, priority, or extent of the obligations in respect of the EDH loan or otherwise, blah, blah, blah. Why, it specifically uses the word priority. Why are we saying here that it doesn't address priority? Two reasons, Your Honor. One is because there's nothing in the order that actually sets the priority or says that the EDH debt has first priority. And secondly, Your Honor, that was not an issue at the time because the contracts that were before the court provided the priority. There's no reason for a party to bring a priority challenge when that issue has not been raised by any party in the court because you have actually three agreements that specify Adler is last, EDH is second, and the SBA is first. So there's no reason for the SBA to bring that claim at that time to establish a primacy payment because that issue wasn't even before the court. But hadn't it just said to the court that it was second? No, that was not until November. The cash collateral was in May of 2023. The statement that was made at the hearing was on November 3rd, I believe, of 2023. So six months later. That's the first time it came up. Had it made its UCC filing prior to the order? It made its UCC filing in, it was pre-petition. It was prior to the bankruptcy filing. Okay. That's correct. So it had filed in the wrong jurisdiction before this order? That's correct. But the issue of the primacy, the issue of whether or not that or the question of whether or not they created an issue was never raised until November of 2023. So two reasons. One, it wasn't before the court because the way the deals were already structured and nobody raised it. And secondly, Your Honor, regardless of the fact that the cash collateral order says priority, it doesn't determine priority. There were three levels of debt and there's nothing in the cash collateral order that says which, you know, how those debts interact and who's first, second, and third. With respect briefly to the issue of judicial estoppel. So again, you can look at the transcript. That was very vague language that was made. I'm trying to find the exact language. Basically, the argument is it was judicial estoppel. Here it is. It's at page 31 of the transcript. The courts asked the SBA's counsel, so in effect I'm hearing that you basically agree that your position is the second position. The answer was yes, Your Honor. That was prefaced by the SBA's counsel saying that they concede in November that they filed in the wrong jurisdiction. It was a discussion of lien priorities once again. One, there's no discussion of payment priority, which is different than lien priority. And number two, you know, at most this is offhand comment. We've cited the court to New Hampshire versus Maine, which is a U.S. Supreme Court decision which says an inadvertent or even mistaken comment by counsel cannot form the basis of judicial estoppel. How is lien priority different from payment priority? Isn't the practical effect the same? It's not, Your Honor, because the case law says that even an unsecured creditor could have priority over a secured creditor if there's an agreement that they would be paid first. And we've cited that case law in our brief. And so in other words, you could not even have a lien, yet be senior in payment priority because the secured lender has agreed that you get paid first. But they could be the same if there's a lien and it's paid first. Well, I'm sorry. I don't understand. I'm sorry. Are there other circumstances other than an agreement in which the result is the same? In which an unsecured creditor could be paid ahead of a secured creditor? No, in which payment priority and lien priority could be the same. I think there could be. If there's no agreement or there's not, and this is not argued here, something like equitable subordination where you claim the lender acted in a bad way and its liens should be subordinated to the debts of all other creditors. We're not arguing that. We're arguing that there was an express agreement between the parties as to who got paid first. And finally, with respect to the argument concerning judicial estoppel, certainly the SBA did not benefit by making a statement in court as to the lien priority. And it was not something that it has inured to its benefit and therefore is trying to profit from at a later date. This simply didn't occur in this case. Your Honor, I briefly want to address, I don't know if the court's aware, I think both sides have pointed this out, there is a companion appeal. It's number 2520479. There is a sanctions order that was issued in the main bankruptcy case relating to this issue. That's not before the court today, but I wanted to make sure the court was aware those issues are tied together because essentially the sanctions order arises from the fact that Judge Norman found that because judicial estoppel prevented Mr. Adler from making the argument that he should be sanctioned for having acted the way he did and brought the claims he brought in the bankruptcy court. And Your Honor, so unless there are any other questions, I'll go ahead and cede the rest of my time and save a few minutes for rebuttal. You've saved time for rebuttal. Thank you, Mr. Adler. Mr. Shannon. Good morning, Your Honors, and may it please the court. My name is R.J. Shannon and I represent Energy Debt Holdings, often referred to as EDH in this case. Our position is that the decisions of the bankruptcy court and the district court should be affirmed. There are multiple reasons for that. And the reasons that were relied upon, because it was a dismissal of the case under 12b-6, there were multiple reasons for that decision that would have justified the dismissal. The reasons relied upon by the bankruptcy court and by the district court are both correct reasons for that dismissal. Why don't you first address this question of whether lien priority determines payment priority, whether there's a difference? Yes, Your Honor. Typically, the answer to that is yes. There can be unique situations where, as my friend on the other side indicated, that there is a difference. I do want to point out that EDH does not agree that there was an agreement to be subordinated to the SBA. There is no, in the record, there is no subordination agreement. In the EDH note, there is no, it is not an agreement to be subordinated. The debtor had a covenant in which it could not have any debt that was senior to EDH or equal to EDH. That would have been a violation of the debtor's covenant. There's an exception to that covenant, and that is with respect to the SBA. So the SBA could have been senior to EDH. It could have also been equal to EDH, and that would not have been a breach of that covenant. But there's not an express agreement there. That hasn't been relied on below. It was argued by EDH in its motion to dismiss, but wasn't ruled on by the courts below. But there could be, you know, conceivably a difference. But I don't believe that that is a fair way to understand what the SBA said at that November 3rd, 2023 hearing. Mr. Adler wants to laser focus in on a couple words that were said. But the overall argument that was presented by EDH at that November 3rd, 2023 hearing was that they were in first priority as to payment. That was what the argument was at that hearing. That EDH had the first priority, and that because of that, it could credit them. The issue that was presented at that hearing, and I also got to say that it had been a dispute long throughout that bankruptcy case. In bankruptcy cases, there are, you know, it's not like a normal litigation where everything kind of comes down to a single point. There are multiple decisions along the way that have a direction to the case. And then there's the confirmation hearing, which ties everything up. There had been a longstanding dispute in that case, in the underlying bankruptcy case. And by the time you get to the November 3rd hearing, the parties had come up with a way to resolve it. That way was going to be an expedited procedure to determine the priority of EDH and the SBA. There was an expedited procedure proposed in the plan that had been submitted, and the only actual dispute was just what happened if there was an appeal, if EDH won and there was an appeal. Would the bankruptcy court's order be guiding, and would it decide the issue for credit bidding for the auction if there was an appeal? EDH's position was, well, of course, right? Orders are enforceable unless they're state pending appeal. That was what the dispute was. And as that hearing went along, EDH presented its arguments to the bankruptcy court. The bankruptcy court then turned to the other parties involved, and there were a few, including the SBA. When the bankruptcy court got to the SBA, the assistant U.S. attorney representing the SBA started off saying, look, in the interests of justice, essentially, we agree with what EDH said. And the bankruptcy court clarified that and said, so what I'm hearing is that you're in second position. The answer from the SBA's attorney was, yes. Yes, Your Honor, I believe. And so based on that, the bankruptcy court then essentially adjourned the hearing, said, well, I'm not going to have in this plan an expedited procedure where there's no dispute. If there's no dispute, we do not need this expedited procedure. The bankruptcy court adjourned the hearing. The parties submitted an agreed confirmation order. That agreed confirmation order, I believe, is page 3555 of the record. And in that confirmation order that was entered by the bankruptcy court, it took out the language of the plan that set that expedited procedure in place. It also included the language that has been discussed here, that set EDH in the first priority of payment. It says of payment in that confirmation order. And there was a reservation for section 510 of the bankruptcy code subordination, but it was limited to the extent it was preserved under the cash collateral order. So that was the acceptance by the bankruptcy court of the position asserted by the SBA. It wasn't just an offhand comment. It was a meaningful comment that ultimately found its way into an order before the court. You know, EDH would submit that the language of that confirmation order and the cash collateral order read together is abundantly clear. The cash collateral order required any challenge to EDH's priority to be made within 90 days of the petition date. Or maybe it was 60 days of the petition date, but one of those two. Or the first hearing set for a confirmation of a plan. Necessarily, it was after both of those dates that the adversary proceeding was brought. The basis for the sanctions asserted in the other case, case 25-20479, it was not judicial estoppel that the bankruptcy court, you know, used as a basis for sanctions. It was not following these orders. On appeal to the district court, the district court said, I'm not going to get into judicial estoppel. That is a more, I guess, a more difficult issue. I'm guessing on why. Said, I'm just going to rely on these orders. These orders are clear and that is a sufficient basis for the district court to affirm the bankruptcy court. That could also be a way the court, this court, could decide the issue. But I do believe that judicial estoppel is appropriate. Can you address the timing distinction that was made by the other side, that there was no dispute at the time of the cash collateral order? You know, I don't know that the record shows that there was a dispute at the time of the cash collateral order, but what the record does show is that there was a dispute early on in the case, well before November of 2023. And before, EDH objected to the first proposed plan in this case because of this exact issue, because EDH said, no, we are in first priority, first priority of lien and of payment. They're the same thing here. That's why there was this expedited procedure in the plan that was ultimately, you know, being pursued on November 3rd, because rather than decide that in the context of a confirmation and expensive trial involving lots of parties, let's bring it down to just the two parties that are affected by this order. One thing that Mr. Adler argues is that the SBA did not actually, I guess, receive something in exchange for this statement. I'll point out to at least a few things that the SBA received from that. One was not being subject to that expedited procedure, not having this procedure put in place to have them need to answer a motion in which this would be determined. The SBA said, we don't need to do that. The bankruptcy court said that is not necessary. I don't need a procedure if there is no dispute here. So that was one thing that the SBA obtained by that. And I'll also just point out what the assistant U.S. attorney representing the SBA said at the beginning. In the interest of justice, Judge, this is what we're saying. I think that is a thing that the SBA received from that. And I'm not so cynical to believe that an assistant U.S. attorney taking an action in the interest of justice is not attaining something. That is a valid thing that the SBA and the assistant U.S. attorney are supposed to be pursuing. Another argument that was raised by Mr. Adler in the briefs was about prejudice to EDH. The prejudice to EDH is not the original statement by the SBA necessarily. Now, EDH wanted this expedited procedure essentially to avoid the exact situation we got here, where this determination is now being brought after the auction of these assets, in which EDH, in which Mr. Adler, in which the SBA all had asserted liens in the collateral. What EDH wanted was a determination before that happened. So we wouldn't get into this situation where the auction has already occurred. And now there is this assertion that, essentially, by Mr. Adler, that even though EDH offered to buy the assets for a certain dollar amount, and they have acquired the assets, now they have to pay more money, right? They credit bid $500,000. There's approximately $500,000 more in cash they put in for these assets. And now Mr. Adler is saying, yeah, and now you have to put in more because you weren't really allowed to credit bid because that comes below the SBA. That's what we were trying to avoid. And so the prejudice to EDH really wasn't necessary. It was only partially what was said at the November 3rd, 2023 hearing. It's what we're having to face now, and that that expedited procedure did not go forward. I want to also kind of point out, I'll come back to that lien priority versus payment priority. Again, it is normally the same thing, right? It is a unique situation in which it's not the same thing. And here, the way that we know, the way that we know that what was being discussed at that November 3rd, 2023 hearing is the proposed order that came from it. The proposed order, again, is in the record at 3555. It expressly mentions priority to payment. And I think that's also tab eight in the record extract provided by EDH. It is priority to payment that is referenced in that, and that was the result of the statements of the SBA. Other reasons were presented by EDH in its motion to dismiss. I believe that any of those would be appropriate reasons to affirm the bankruptcy court's order. We've already mentioned the language, the language in the actual EDH note in which this purported subordination agreement was in. Again, it was not an agreement to be subordinated. It was an exception to a covenant of the debtor. There are other potential bases for estoppel here. Maybe not judicial estoppel, but some kind of equitable estoppel or quasi-estoppel could apply here. Again, Mr. Adler waited until after EDH already bid on the assets, acquired a bid on the assets, had not yet closed on the transaction, and then filed his adversary proceeding. And, again, the ultimate result that Mr. Adler wants is for EDH to have to pay more than what it agreed to in that sale order and more than what the bankruptcy court ordered, more than what was offered. That is the ultimate outcome there. And, again, it could have been brought earlier. We think there are other bases for estoppel here. There is the language of the orders, the bankruptcy court orders, like the district court said. And so for any of these reasons, Your Honors, we believe that the bankruptcy court decision should be affirmed. Thank you, Mr. Shannon. Mr. Taylor for rebuttal. Yes, and thank you. I want to go first to the notion that somehow EDH didn't agree that it would be subordinated. Here's the exact language from their promissory note. The indebtedness secured by this note shall be senior to all other indebtedness of source water, save and except for the EIDL entered into by a borrower with an effective date of May 16, 2020, as may be amended or modified. What the case law says, aside from the Bobby Boggs decision from the Fifth Circuit, to Judge Clark's opinion on the bankruptcy case and the Terrace Gardens Park case in the Western District of Texas, as well as other cases to make it very clear, you don't have to have a formal subordination agreement. In Bobby Boggs, it was a statement in a letter from an assistant vice president of the bank that the Fifth Circuit found was sufficient to support a finding that they had agreed to subordinate to another creditor. So there's no particular language that's required. Secondly, it can, in fact, be an unsecured creditor, which we've cited to in the case. The case we cited to was in Ray Smith in our brief. But given the fact that you don't need any formal agreement, it shouldn't really even be an issue, whether it's a lien creditor or a non-lien unsecured creditor. You don't have to have an agreement between creditors for there to be a subordination. One creditor can enforce a subordination agreement between another creditor and a debtor. We've cited you to two cases for that proposition, the Bennett case and the Lantana case in our brief. I want to put this back in the context of what we're here on today. We're here today on an appeal of an order granting a 12B motion to dismiss. What I heard from the Appalachian Council is a lot of, well, the evidence shows this and the evidence shows that. The evidence shows there's no prejudice. The evidence supports equitable estoppel. We didn't have an evidentiary hearing. That's the point of why we're here. A 12B6 hearing is not an evidentiary hearing. It's whether or not you've stated a claim on the face of the complaint, which ought to be heard by the court, and there ought to be evidence presented. There was no evidence presented at that hearing because it was a Rule 12B6 hearing. Could the court not consider the actual orders or its own record as part of that review? You can. You can take judicial notice of really anything on a public record on a Rule 12B6 motion. I think there's Fifth Circuit case law on that. So they could certainly look at the record. They could look at what's in the confirmation orders. But the notion that there is an evidentiary determination is not correct on a Rule 12B6 motion. I know that Appley wants to say this was an issue during the course of the case. There was not an issue in May of 2023 as to priority. It's raised at the November 3, 2023 hearing, which resulted in the colloquy that we discussed with the court and counsel, the SBA's counsel, as to them being in second position. What does that mean? Certainly they're in second position. They don't have a lien. They were an unsecured creditor at that point because they didn't perfect their lien. That doesn't answer the fundamental question of who's entitled to payment first. And I point the court back to the language I quoted at the outset of my rebuttal on exactly what the EDH note says that says it is not senior. The indebtedness didn't even talk about liens. The indebtedness is not senior to the SBA note. And so for that reason, Your Honor, we believe that the order granting the motion to dismiss was incorrectly entered. Excuse me, I'm interrupting but just following up on what you just said because Mr. Shannon pointed out that after the SBA said what it said, then the district court said there's no dispute on priority. So are we to overlook that or what significance do we get? That sounds pretty definitive to me after the court had heard what the SBA said. Actually, what the court said, Your Honor, was so in effect I'm hearing that you basically agree that your position is the second position. And the answer was yes. But it was done, if you look at what led to that question, the discussion in the transcript, that was page 31. On page 30, she's admitting that they filed the lien in the wrong place. And the discussion that leads into that starts back at page 19 where there is a discussion by Mr. Shannon about the fact that the lien filing was done in the wrong place. So once again, we don't dispute if you're talking about who had a senior lien, then you have the EDH lien was senior to any lien asserted by the SBA. The question is whether or not, regardless of whether there was a lien, if EDH agreed that it would be paid second behind EIDL, its indebtedness in the note is said to be second in line to the EIDL loan, and that's really the issue before the court. What did they agree to? Well, they agreed to say that their indebtedness was junior to the EIDL loan, and our position is that meant they get paid second. But what about his point that priority was challenged pre-petition? It wasn't challenged pre-petition. What he's trying to say, what he's arguing is he raised it in the context of an objection to the confirmation of the debtor's plan, which was long after May 2023. That was what the November of 2023 hearing was about. He's not saying it was raised pre-petition. He's not saying it was raised prior to the entry of the cash collateral order. He's saying it was raised at some point later in the case, which is exactly what we're arguing. It didn't come before the court until November 3rd of 2023. Well, after that challenge period was even an issue for the May 2023 order. All right. Thank you, Mr. Taylor. Thank you, Your Honor. The case is under submission. That's the case for today.